UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


LOUISIANA ENVIRONMENTAL CONCEPTS, LLC        CIVIL ACTION

v.                                           NO. 18-12568

BKW, INC.                                    SECTION "F"


<u>ORDER AND REASONS</u>

Before the Court is third-party defendant MLU Services, Inc.'s motion to dismiss BKW, Inc.'s third-party complaint. For the reasons that follow, the motion is GRANTED.

## Background

This litigation is fall-out from a cancelled hurricane disaster recovery project in the U.S. Virgin Islands.

MLU Services, Inc. provides disaster recovery and relief services, including demolition, right of way clearing, hazardous tree removal, construction, workforce management, logistics, temporary housing, and related services to governments and private citizens. MLU successfully bid on a project to provide hurricane emergency response assistance services to St. John Island after Hurricane Irma; Virgin Islands Waste Management Authority entered into a prime contract with MLU to provide disaster relief services. To fulfill its obligations under the prime contract, MLU

subcontracted with WTL Corporation; MLU and WTL memorialized their agreement in a Master Subcontractor Agreement on December 12, 2017, as well as a Task Order, as contemplated by the MSA, signed the next day.

BKW, Inc. specializes in land clearing, earth moving, underground utilities, erosion control, storm drainage, debris management, and trucking. Effective January 23, 2018, BKW agreed to lease certain equipment to MLU pursuant to a Vehicle/Equipment Lease. BKW, in turn, contracted with Louisiana Environmental Concepts, LLC (LEC), which agreed to lease roll-off boxes on an open account basis.[1] MLU separately contracted with barge operators to transport equipment to St. John.

No work was completed under the MSA or the Task Order. MLU's participation in the project was cancelled by the U.S. Virgin Islands Waste Management Authority when the barge transporting the equipment took 30 (instead of five) days to arrive to St. John. By then, the U.S. Virgin Islands Waste Management Authority deemed its contract with MLU "expired" and hired a different company to provide disaster relief services.[2]

---

[1] BKW alleges that it contracted with MLU and then BKW subcontracted with LEC for the rental of roll-off boxes.
[2] There is no dispute about these "facts" concerning the demise of the prime contract between MLU and Waste Management Authority in

On October 4, 2018, Louisiana Environmental Concepts, LLC sued BKW, LLC in state court, alleging that BKW owes $77,860 under BKW's open account with LEC. LEC alleges that BKW contracted with LEC for the rental of roll-off boxes on an open account basis; between January 1, 2018 and March 10, 2018 LEC leased roll-off boxes to BKW. BKW removed the lawsuit to this Court, invoking the Court's diversity jurisdiction under 28 U.S.C. § 1332. BKW answered LEC's state court petition and filed a third-party complaint against MLU Services, Inc., alleging that: MLU sub-contracted with BKW for "services" (including loading, hauling, separation, and unloading) in relation to the "Work" identified in the Master Subcontractor Agreement; BKW sub-contracted with LEC for the rental of roll-off boxes to be used in relation to the Work in the Virgin Islands; BKW caused its and LEC's property, machinery, and materials, including LEC roll-off boxes, to be loaded onto a barge provided by MLU for transport to the Virgin Islands; upon the barge's arrival in the Virgin Islands, MLU informed BKW that it no longer needed BKW's work and refused to allow it to complete the work; MLU did so without first sending written notice of its intention to terminate the contract as

---

St. John. Even though these facts are not found in any pleading, they are noted for context and are not consequential in resolving MLU's motion to dismiss.

required by the Master Subcontractor Agreement at Section 5.2; MLU breached the Task Order and the Master Subcontractor Agreement; and BKW sent two invoices to MLU, neither of which have been paid, thus leaving $227,554.18 due and owing to BKW "pursuant to the Task Order and Master Subcontractor Agreement."  BKW also seeks indemnification from MLU for any amounts BKW owes to LEC because BKW's sub-contract with LEC was terminated due to MLU's breach of the Task Order and Master Subcontractor Agreement.

MLU now moves to dismiss the third-party complaint for failure to state a claim upon which relief may be granted.

## I.

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted.  Such a motion is rarely granted because it is viewed with disfavor.  See Lowrey v. Tex. A & M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997) (quoting Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982)).

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009)(citing Fed. R. Civ. P. 8).

"[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Id.</u> at 678 (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).

In considering a Rule 12(b)(6) motion, the Court "accept[s] all well-pleaded facts as true and view[s] all facts in the light most favorable to the plaintiff." <u>See</u> <u>Thompson v. City of Waco, Texas</u>, 764 F.3d 500, 502 (5th Cir. 2014) (citing <u>Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys</u>, 675 F.3d 849, 854 (5th Cir. 2012)(en banc)). But, in deciding whether dismissal is warranted, the Court will not accept conclusory allegations in the complaint as true. <u>Id.</u> at 502-03 (citing <u>Iqbal</u>, 556 U.S. at 678).

To survive dismissal, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" <u>Gonzalez v. Kay</u>, 577 F.3d 600, 603 (5th Cir. 2009)(quoting <u>Iqbal</u>, 556 U.S. at 678)(internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." <u>Twombly</u>, 550 U.S. at 555 (citations and footnote omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."). This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. at 678 (internal quotations omitted) (citing Twombly, 550 U.S. at 557). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'", thus, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (alteration in original) (citation omitted).

Finally, "[w]hen reviewing a motion to dismiss, a district court 'must consider the complaint in its entirety, as well as other sources ordinarily examined when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Funk v. Stryker Corp., 631 F.3d 777, 783 (5th Cir. 2011)(quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)). If the Court considers materials

outside of the pleadings, the motion to dismiss must be treated as a motion for summary judgment under Rule 56. <u>See Causey v. Sewell Cadillac-Chevrolet, Inc.</u>, 394 F.3d 285, 288 (5th Cir. 2004); <u>see also</u> Fed. R. Civ. P. 12(d).

## II.

### A.

A federal court sitting in diversity applies the substantive law of the forum state; here, Louisiana. <u>See Wisznia Co., Inc. v. General Star Indm. Co.</u>, 759 F.3d 446, 448 (5th Cir. 2014).[3] MLU moves to dismiss BKW's third-party claims for breach of contract and indemnity. "The essential elements of a breach of contract claim are (1) the obligor's undertaking an obligation to perform, (2) the obligor failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the obligee." <u>Favrot v. Favrot</u>, 68 So. 3d 1099, 1108-09 (La.App. 4 Cir. 2011)(citations omitted). To determine whether BKW has stated a plausible claim, the Court turns to the Louisiana Civil Code, which governs "obligations:"

> [a]n obligation is a legal relationship whereby a person, called the obligor, is bound to render a performance in favor of another, called the obligee.

---

[3] At this stage of the proceedings and given the nature of BKW's claims, BKW and MLU appear to agree that Louisiana law applies despite the choice of Georgia law by the Master Subcontractor Agreement.

Performance may consist of giving, doing, nor not doing something.

La. Civil Code art. 1756. The effect of an obligation, the Civil Code instructs, may be to "give the obligee the right to: (1) Enforce the performance that the obligor is bound to render; [or] (3) Recover damages for the obligor's failure to perform, or his defective or delayed performance...." <u>Id.</u> at art. 1758.

One source of obligations is a contract. <u>Id.</u> at art. 1757.[4] "A contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished." <u>Id.</u> at art. 1906.[5] "Contracts have the effect of law for the parties[.]" <u>Id.</u> at art. 1983. A party to a contract "is liable for the damages caused by his failure to perform a conventional obligation." <u>Id.</u> at art. 1994. A failure to pay money due under a contract is a failure to perform in the context of [article 1994]." <u>Occidental</u>

---

[4] Obligations may also arise from "other declarations of will" or they may "arise directly from the law, regardless of a declaration of will, in instances such as wrongful acts, the management of the affairs of another, unjust enrichment and other acts or facts." <u>Id.</u>

[5] A valid contract in Louisiana requires capacity, consent, a lawful cause, and a valid object. <u>See</u> <u>Granger v. Christus Health Ctr. La.,</u> 144 So. 3d 736, 761 (La. 2013); <u>see</u> <u>also</u> La. Civ. Code arts. 1818, 1927, 1966, 1971. Consent is "established through offer and acceptance," which may "be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent." La. Civ. Code art. 1927.

Chem. Corp. v. La. Pub. Serv. Comm'n, 494 F. Supp. 2d 401, 416 (M.D. La. 2007)(citation omitted).

"A party who demands performance of an obligation must prove the existence of the obligation[.]" La. Civ. Code art. 1831; FIA Card Services, N.A. v. Weaver, 62 So. 3d 709, 719 (La. 2011)("It is not defendant's burden to prove the non-existence of an agreement; it is the burden of the party seeking to enforce a contract to show the contract exists."). It is the "party claiming the existence of a contract [whom] has the burden of proving that the contract was perfected between himself and his opponent." Pennington Constr., Inc. v. R A Eagle Corp., 652 So.2d 637, 639 (La.App. 1 Cir. 1995)(citing La. Civ. Code art. 1831)). To be sure, for a party "to be bound by a written instrument, the party must be a signatory to the instrument." Id. (citing La. C. C. art. 1937 and comment (b)).

Generally, in the absence of privity of contract between the parties, no cause of action for breach of contract will lie. See Pearl River Basin Land and Dev. Co., L.L.C. v. State ex rel. Governor's Office of Homeland Sec. & Emergency Preparedness, 29 So.3d 589, 592 (La.App. 1 Cir. 2009)(citation omitted); Matthews v. Stolier, No. 13-6638, 2015 WL 1726211, at *7 (E.D. La. Apr. 15, 2015)("It is well established that Louisiana provides no action

for breach of contract in the absence of privity between the parties."). However, one exception to this rule of privity is when a contract stipulates a benefit for a non-party. "A contracting party may stipulate a benefit for" a non-party to the contract creating a third party beneficiary. See La. Civ. Code art. 1978. In Louisiana, such a contract for the benefit of a third party is called a stipulation pour autrui. Joseph v. Hosp. Serv. Dist. No. 2 of Parish of St. Mary, 939 So. 2d 1211 (La. 2006). The state high court applies three criteria to determine whether contracting parties created a stipulation pour autrui: "1) the stipulation for a third party is manifestly clear; 2) there is certainty as to the benefit provided the third party; and 3) the benefit is not mere incident of the contract between the promisor and the promisee." Id. at 1212. "It is well settled that for a person to successfully maintain an action under a contract to which it is not a party the contract must clearly express the contracting parties' intent to stipulate some advantage for that (third) person." Arrow Trucking Co. v. Continental Ins. Co., 465 So. 2d 691, 698 (La. 1985)(citing Louisiana Civil Code provisions now consolidated at article 1978).

*B.*

MLU contends that (1) BKW's third-party breach of contract claim must be dismissed because BKW is not a party to the Master Subcontractor Agreement, which is the contract BKW alleges MLU breached; and (2) BKW's indemnity claim must be dismissed because BKW has no basis to seek contractual indemnity from MLU.  The Court agrees.

BKW attaches to its third-party complaint, and, thus, the Court considers as incorporated into the pleadings, three contracts: the Master Subcontractor Agreement between MLU and WTL; the Task Order between MLU and WTL; and a Vehicle/Equipment Lease between BKW and MLU.  A brief summary of these contracts incorporated into the pleadings is necessary to place in context the claims asserted by BKW in its third-party complaint.

As the law between MLU [as Company] and WTL [as Subcontractor], among its many provisions, the Master Subcontractor Agreement provided:

> **2.3 <u>Type of Agreement</u>**.  This is an indefinite delivery, indefinite quantity...Agreement.  It is anticipated that [Task Orders] shall be issued.... company makes no guarantee of the dollar value or the quantities of work to be requested from the Subcontractor under this Agreement.
>
> ...

**4.1.** **Fees.** The Company shall pay Subcontractor for Services rendered during the Term based on the established firm fixed price and/or pricing for the [Task Order] deliverables, or where applicable at the hourly or other billing rate or rates set forth in each TO, upon acceptance and submission of proper and sufficient invoices....

...

**5.1.** **Term**. The term of this Agreement...for the purposes of issuing TOs shall commence on the Effective Date and continue until the first to occur of (i) the one (1) year anniversary of the Effective Date or (ii) the termination of the Company's contract with its Customer, or (iii) termination in accordance with this ARTICLE.

...

**5.5.** **Termination by Customer**. Should Customer terminate the Prime Contract with Company or any part thereof which includes Subcontractor's Services, Company shall so notify Subcontractor in writing. The TO(s) thereby affected shall be terminated, and Subcontractor shall immediately stop its Services, follow all of Company's instructions, and mitigate all costs. No other prior notice is required as this Article is in addition to any other termination rights contained in this Agreement. In the event of such Customer termination, Company's liability to Subcontractor is limited to the extent of Company's recovery on Subcontractor's behalf under the Prime Contract.

...

**6.8.** **No Agency**. Subcontractor shall not have authority to obligate or incur on behalf of the Company or any of its affiliates any expense, liability or obligation.

...

**15.1.** **Indemnification.** Subcontractor hereby agrees to indemnify, hold harmless and defend the Company and Customer...against all claims, liabilities, losses, expenses (including attorney's fees and legal expenses related to such defense), fines, penalties,

taxes or damages...asserted by any third party...where such liabilities arise out of or result from [eight circumstances].

...

**15.4.** **Limitation of Liability**. COMPANY SHALL NOT HAVE ANY LIABILITY TO THE SUBCONTRACTOR FOR ANY LOST PROFITS OR SPECIAL, INCIDENTAL, PUNITIVE, EXEMPLARY, INDIRECT OR CONSEQUENTIAL DAMAGES, REGARDLESS OF THE FORM OF ACTION OR CLAIM, EVEN IF SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

...

**21.13.** **Choice of Law and Venue**. [T]he Company and Subcontractor agree that this Agreement shall be interpreted and enforced in accordance with the laws of the State of Georgia, as if it were made and performed entirely in Georgia by persons domiciled therein, and, subject to the alternative dispute resolution provision contained in, the parties consent to the jurisdiction and venue of the U.S. District Court for the Northern District of Georgia (Atlanta Division) for the resolution of any civil action relating to this Agreement.

In addition to these provisions, Article 18 contains a layered alternative dispute resolution process including, first, an informal dispute resolution clause, followed by, second, a mediation clause and, if either of those methods fail to resolve the parties' dispute, an arbitration clause. Article 19 precludes WTL from sub-subcontracting its responsibilities without prior written consent from MLU: "Subcontractor [WTL] may not assign or sub-subcontract any portion of this Agreement or any TO without the prior written consent of Company, which consent may be granted or withheld in its sole discretion." This provision also obliges

WTL to disclose in writing the identity of any sub-subcontractor WTL sub-subcontracts with as well as a copy of the sub-subcontract or supplier agreement and other information.

The second contract incorporated into the pleadings, TASK ORDER-HAULING (between MLU and WTL), stated the following in terms of the agreement's scope:

Sub is providing all necessary management, personnel, labor, service, documentation, supplies, equipment, tools, other supplies, facilities support services, consumables, and every item of expense required to perform the tasks, furnish services and provide support to the MLU,...in accordance with the requirements all as set forth herein for collection (includes the loading, hauling separation, and unloading of solid waste bins/trucks):

a.   storm related construction debris and bulk solid waste removal at fixed bin locations, hauling and disposal

b.   roadside pick-up of residential debris and solid waste, hauling and disposal

c.   collection, hauling and disposal of residential trash

d.   delivering items (a)-(c) to the barge for transport to St. Thomas and then from the barge to the Bovoni Landfill or other site designated by MLU.

All municipal bulk solid wastes loaded, hauled, and separated must be transported to the island of St. Thomas for final disposal or processing.... Sub is required to perform all loading, hauling, separate and unloading of debris per Schedule 1, the Agreement and this Task Order.

According to the Task Order, WTL would be paid $20.00 for each Cubic Yard for loading and hauling up to 15 miles and $25.00 for each Cubic Yard for loading and hauling over 15 miles.

Finally, the third contract attached to BKW's third-party complaint is a January 23, 2018 Vehicle/Equipment Lease between BKW and MLU.  Curiously, and of some consequence given it is the only contract at issue to which BKW is a signatory, the Lease is not mentioned in BKW's third-party complaint.  MLU purports to lease from BKW certain property and equipment for a 12 month term with the option to extend.  The Lease obliges MLU to pay BKW, every 30 days, $500 for each vehicle and $100 for each bin "for the continued use of the Leased Vehicle."  The Lease provides that leased vehicles "shall ONLY be used in the ordinary course of [MLU's] business" and "shall only be used in the VIRGIN ISLANDS."[6] The Lease provides, "[u]pon breach of this Lease both parties have any remedies at law or in equity" and "[t]his Lease shall be governed by and construed in accordance with the laws of the state

---

[6] The Lease states that "Lessor has a contract with Lessee for work in the Virgin Islands which is incorporated herein by reference. To the extent of a conflict herein and the MSA, the MSA shall control."  Again, because the Lease is not mentioned in the third-party complaint, only attached to it, BKW makes no allegations as to the legal significance of these provisions.

where the Leased Vehicle is used unless specifically pre-empted by rules or laws promulgated by the United States of America."

These three contracts, along with the open account of roll-off boxes LEC leased to BKW (the subject of the main demand), underlie this dispute. In its third-party demand against MLU, BKW alleges, MLU sub-contracted with it for services, including loading, hauling, separation, and unloading of solid waste bins and trucks. As the source of this sub-contract for services, BKW points to the Master Subcontractor Agreement and Task Order. In Count 1, BKW alleges that MLU breached the Master Subcontractor Agreement and Task Order by failing to send it written notice of its intention to or purpose for terminating the Master Subcontractor Agreement. BKW alleges that MLU failed to pay its January 5, 2018 and March 2, 2018 invoices related to the "Work" of the Master Subcontractor Agreement and Task Order. MLU moves to dismiss the breach of contract allegations, contending simply that BKW is not in privity of contract with MLU under either the Master Subcontractor Agreement or the Task Order. And MLU moves to dismiss BKW's indemnity claim on the ground that BKW has no alleged basis to seek contractual indemnity from MLU. The Court considers each claim in turn.

*C.*

1.  Breach of Contract Claim

BKW's breach of contract claim against MLU fails as a matter
of law for lack of privity.  The contracts central to BKW's breach
of  contract  theory  of  recovery  are  the  Master  Subcontractor
Agreement and the Task Order.  Neither contract references BKW,
nor does BKW allege that it was (and if it was, how it became) a
party to either contract.  Rather, BKW's privity argument hinges
on the the Vehicle/Lease Agreement between MLU and BKW, which BKW
attaches to (but does not mention in) its third-party complaint.
There  can  be  no  quarrel  with  BKW's  argument  in  its  opposition
papers that "the Vehicle/Equipment Lease...between BKW as lessor
and MLU as lessee attached to the Third Party Complaint as Exhibit
A is a contract."  Notably, however, BKW nowhere alleges in its
third-party  complaint  that  MLU  breached  the  Vehicle/Lease
Agreement. Indeed, there is not a single reference to the Lease in
the third-party complaint.[7]  Rather than alleging that MLU breached

---

[7] It borders on misleading that BKW: (a) does not reference the
Lease in its third-party complaint; (b) attaches the first page of
the Task Order between MLU and WTL, but attaches as the second
page of the four-page Task Order the signature page of the Lease
between MLU and BKW; and (c) notes in its opposition -- without
mentioning (b) -- that "MLU contracted with BKW for equipment
rental" and "[i]n accordance with the Lease and in conjunction
with that certain Master Subcontractor Agreement by and between
WTL, Corp. and MLU, BKW caused its and [LEC's] property...to be

the Lease, which is the only contract attached to the pleadings that demonstrates privity between MLU and BKW, BKW alleges that MLU sub-contracted with BKW for "services" consistent with the Work defined in the Master Subcontractor Agreement. BKW fails to advance any allegations in its third-party complaint or provide legal support for any argument that privity with respect to one contract between two parties (the Lease between BKW and MLU) may serve as the legal anchor for privity with respect to a different contract (the Master Subcontractor Agreement between MLU and WTL).[8] Nor does BKW allege let alone suggest that it was a third party beneficiary of MLU and WTL's Master Subcontractor Agreement or Task Order. If BKW has a contractual right of action against MLU, it has not alleged one in its third-party complaint.

Given the absence of factual allegations that, if proved, would support a finding that MLU breached a contract to which BKW was a party or third-party beneficiary, BKW fails to state a breach

---

loaded on a barge provided by MLU for transport to the US Virgin Islands to complete the Work" and "[t]he Lease is attached to the Third Party Complaint and is central to BKW's claims." Without offering any explanation as to the discrepancy between the Task Order between MLU and WTL and the Lease between MLU and BKW, BKW again attaches to its opposition papers the same documents in the same misleading fashion as it did in its third-party complaint.

[8] If the Court accepts BKW's theory of liability, MLU argues, then, absurdly, a non-party to an agreement can perform unauthorized work, issue invoices for that work, and then sue to recover for that unauthorized work pursuant to a contract that otherwise does not give rise to an obligation for payment.

of contract claim upon which relief may be granted. However, as leave to amend shall be freely granted, the Court will allow BKW to amend its third-party complaint to state a breach of contract claim if it can in good faith do so.

2. Indemnity Claim

In Count 2 of its third-party complaint against MLU, BKW seeks indemnity from MLU for any amounts BKW owes to LEC. BKW alleges that it was forced to terminate its subcontract with LEC for the rental of roll-off boxes to be used in relation to the "Work" in the Virgin Islands due to MLU's breach of the Task Order and the Master Subcontractor Agreement and, therefore, BKW's liability to LEC should be shifted to MLU. MLU moves to dismiss BKW's indemnity claim because there is no contractual (or other) basis for imposing indemnity. Based on the allegations in the third-party complaint and the relevant contracts, the Court agrees.

Indemnity obligations arise either by contract or by operation of law. <u>Bienville Parish Police Jury v. U.S. Postal Service</u>, 8 F. Supp. 2d 563, 569 (W.D. La. 1998). Like other contracts, "it is the terms of the indemnity agreement which govern the obligations of the parties." <u>Meloy v. Conoco, Inc.</u>, 504 So. 2d 833, 839 (La. 1987). The Court interprets indemnity agreements using the general rules of contract interpretation. <u>Id.</u>

"Interpretation of a contract is the determination of the common intent of the parties." La. Civ. Code art. 2045. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." Id. at art. 2046.

BKW's deficient (or nonexistent) privity allegations also doom its indemnity claim. BKW fails to allege facts that, if proved, entitle it to contractual indemnity against MLU. Again, BKW alleges that it contracted with MLU for services but, again, there are no allegations that, if proved, would show that BKW entered into a Master Subcontractor Agreement and Task Order with MLU. BKW likewise fails to allege the source of MLU's indemnity obligation. Insofar as BKW alleges that MLU breached the Task Order and Master Subcontractor Agreement and implies that one of those contracts is the source of MLU's indemnity obligation, BKW misapprehends the plain words of the contracts. The only contractual indemnity provision expressly requires *the "Subcontractor" (WTL)* to indemnify the "Company" (MLU) against all claims, liabilities, losses, or damages asserted by any third party. If the Court indulged BKW's argument that it somehow steps into the shoes of WTL under the Master Subcontractor Agreement, it is the Master Subcontractor Agreement's indemnity provision that is written in favor of MLU. Absent any anchor in law for an

indemnity obligation in its favor, BKW's indemnity claim fails as a matter of law.

Accordingly, IT IS ORDERED: that MLU's motion to dismiss is hereby GRANTED. BKW's third-party complaint is dismissed without prejudice to its opportunity, within seven days, to seek leave to file an amended third-party complaint if it can in good faith do so.

New Orleans, Louisiana, May 7, 2019

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE